UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RICHARD PESSERILLO,

                                Plaintiff,

               -against-

NATIONAL GRID,

                              Defendant.

------------------------------------------------------------------X

14-CV-3800-LDW-GRB

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

---

Patrick M. Collins
M. Christopher Moon
McCarter & English, LLP
245 Park Avenue, 27th Floor
New York, New York 10167
(212) 609-6800

ME1 18769527v.1

## <u>TABLE OF CONTENTS</u>

Page(s)

FACTUAL SUMMARY AND PROCEDURAL HISTORY ............................................................1

    A.    Allegations of the Complaint ...............................................................................1

    B.    The General Release ............................................................................................2

    C.    Procedural History ...............................................................................................5

ARGUMENT ....................................................................................................................................5

POINT I   THE COMPLAINT SHOULD BE DISMISSED DUE TO
             PLAINTIFF'S WAIVER OF HIS RIGHT TO SUE NATIONAL GRID. ..............5

    A.    Standard for Motion to Dismiss ..........................................................................5

    B.    The Standard for Evaluating Employee Waivers ................................................6

    C.    The Totality of the Circumstances Shows that the Release was Voluntary. ......7

    D.    Plaintiff Has Waived All State Law Claims Against National Grid .................11

CONCLUSION ...............................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................................5

*Aylaian v. Town of Huntington,*
    762 F.Supp.2d 537 (E.D.N.Y. 2011) ......................................................................9

*Bachiller v. Turn On Prods., Inc.,*
    No. 00 Civ. 8701, 2003 WL 1878416 (S.D.N.Y. Apr. 14, 2003) ...........................9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................................5

*Bormann v. AT&T Communications, Inc.,*
    875 F.2d 399 (2d Cir. 1989).................................................................6, 7, 8, 9, 10, 11

*Cerny v. Rayburn,*
    972 F.Supp.2d 308 (E.D.N.Y. 2013) ......................................................................5

*Figueroa v. MRM Worldwide,*
    12 Civ. 4115, 2014 WL 902953 (S.D.N.Y. Mar. 7, 2014) .....................................6

*Fletcher v. Palazzo,*
    151 F. App'x 73 (2d Cir. 2005) ..............................................................................6

*Hsueh v. Bank of N.Y.,*
    No. 05 Civ. 5345, 2006 WL 2778858 (S.D.N.Y. Sept. 26, 2006) ..........................8

*Int'l Audiotext Network, Inc. v. AT&T,*
    62 F.3d 69 (2d Cir. 1995).........................................................................................2

*Johnston v. Carnegie Corp. of N.Y.,*
    No. 10 Civ. 1681, 2011 WL 1118662 (S.D.N.Y. Mar. 23, 2011) ..........................9

*Kramer v. Vendome Grp. LLC,*
    11 Civ. 5245, 2012 WL 4841310 (S.D.N.Y. Oct. 4, 2012) ..................................7, 8

*Laramee v. Jewish Guild for the Blind,*
    72 F.Supp.2d 357 (S.D.N.Y. 1999) ...............................................................6, 7, 9, 11

*Livingston v. Adirondack Beverage Co.,*
    141 F.3d 434 (2d Cir. 1998).....................................................................................6

*Mandavia v. Columbia Univ.*,
    No. 12 Civ. 2188, 2013 WL 2391695 (S.D.N.Y. June 3, 2013)................................8

*Matusovsky v. Merrill Lynch*,
    186 F.Supp.2d 397 (S.D.N.Y. 2002)........................................................7

*In re NYSE Specialists Sec. Litig.*,
    503 F.3d 89 (2d Cir. 2007)...............................................................1

*In re OCA Interpreters Litig.*,
    10 Civ. 7356, 2013 WL 3733382 (S.D.N.Y. July 16, 2013) ...........................8, 9, 10

*Rivera v. Sovereign Bank*,
    976 F.Supp.2d 270 (E.D.N.Y. 2013) ...........................................6, 8, 11

*Rozenfeld v. Dep't of Design & Const. of City of New York*,
    875 F.Supp.2d 189 (E.D.N.Y. 2012) ..............................................8, 10

*Smith v. Local 819 I.B.T. Pension Plan*,
    291 F.3d 236 (2d Cir. 2002)............................................................5

*Vargas v. Manhattan & Bronx Surface Transit Operating Auth.*,
    08 Civ. 9254, 2010 WL 1783555 (S.D.N.Y. Apr. 30, 2010)...........................10

**STATE CASES**

*Goode v. Drew Bldg. Supply, Inc.*,
    266 A.D.2d 925, 697 N.Y.S.2d 417 (4th Dep't 1999)...............................11

**FEDERAL STATUTES**

42 U.S.C. §§ 12101 *et seq.*.......................................................................5

**STATE STATUTES**

N.Y. Exec. Law § 296.............................................................................5

**RULES**

Fed. R. Civ. P. 12(b)(6).......................................................................1, 5

ME1 18769527v.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
RICHARD PESSERILLO,

                                        14-CV-3800-LDW-GRB
                          Plaintiff,

          -against-

NATIONAL GRID,

                          Defendant.
---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant National Grid USA ("National Grid") submits this memorandum of law in support of its motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The gravamen of the Complaint is that National Grid constructively discharged Plaintiff Richard Pesserillo based on his alleged disability.  However, when he resigned and retired from National Grid, Plaintiff knowingly and voluntarily entered into an Agreement and General Release (the "Agreement") with his union and National Grid in which, in exchange for valuable benefits, he released all claims arising from his employment with National Grid.  Plaintiff's release covers all claims asserted in this action.  Therefore, the Complaint should be dismissed.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

### A.    Allegations of the Complaint[1]

National Grid is a private utility company that provides electrical power to customers on

---

[1] A true and correct copy of the Complaint is attached to the Affirmation of Patrick M. Collins ("Collins Aff." as *Exhibit A*.  National Grid does not admit the material allegations of the Complaint, which the Court is required to accept as true solely for purposes of the motion to dismiss.  *See In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).

Long Island.  (Collins Aff., Ex. A, ¶ 5.)  Plaintiff was hired by a predecessor to National Grid in 1977 as a Grade I Mailboy.  (Id. at ¶ 7.)  In June 1977, Plaintiff was promoted to the position of Meter Reader.  In 1981, Plaintiff was promoted to the position of "Meter and Test."  (Id. at ¶ 8.) In 1985, Plaintiff was promoted to the position of Overhead Lineman (First Class).  In 1993, he was promoted to the position of Working Foreman A, Overhead Lines.  (Id. at ¶ 9.)  In 2011, National Grid promoted Plaintiff to the position of Emergency Service Specialist, and his duties included the repair and maintenance of high voltage power lines.  (Id. at ¶ 10.)

In March 2013, Plaintiff was involved in a vehicular accident at work.  (Id. at ¶ 11.)  The next day, he was medically examined through a sleep study and diagnosed with "severe obstructive sleep apnea with hypoxic reaction," which was the "critical factor" that caused the accident.  (Id. at ¶ 12.)  National Grid suspended Plaintiff pending investigation of the accident and subsequently charged him with "falsification of records" due to his failure to indicate on a medical form that he suffered from a sleep disorder.  (Id. at ¶¶ 13, 15.)  Subsequently, on or about May 31, 2013, Plaintiff was "constructively discharged" from employment and forced to retire "under the threat that if he did not, he would be fired and lose certain retirement benefits." (Id. at ¶ 16.)

**B.**     **The General Release**

On May 31, 2013, National Grid, Plaintiff and his union, Local 1049, International Brotherhood of Electrical Workers, AFL-CIO (the "Union"), entered into the Agreement. (Collins Aff., Ex. B.)[2]  Pursuant to the Agreement's terms, Plaintiff released National Grid from all claims in exchange for good and valuable consideration, which included National Grid's agreement not to discharge Plaintiff, to convert a suspension without pay to paid vacation, to

---

[2] A true and correct copy of the Agreement is attached to the Collins Aff. as Exhibit B.  The Court may consider the Agreement in deciding the motion to dismiss since it is integral to the Complaint.  *Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995).

continue Plaintiff's employment through June 30, 2013, and to permit him to retire as a National Grid employee effective on July 1, 2013.  (Id. at ¶ 4.)

National Grid instructed Plaintiff in writing as to the binding nature of the Agreement and Plaintiff's rights and responsibilities thereunder.  The Agreement is captioned "AGREEMENT AND GENERAL RELEASE" and contains a release of National Grid from "any and all claims … of any nature and arising out of or relating to any matter or thing whatsoever, whether known or unknown, through the date of this Agreement."  The release specifically includes claims of "[e]mployment discrimination of any kind, whether under … the Americans with Disabilities Act, as amended, … the New York State Human Rights Law … or any other statute, law, ordinance or regulation."  (Id. at ¶ 4.)

The Agreement is written in plain English in 12-pt. font and is clear and easy to understand.  In addition to the clarity of the Agreement's body, it also contains two boldfaced notifications, one each at the beginning and end.  At the top of the Agreement in boldface type it states:

> ***THIS IS AN IMPORTANT LEGAL DOCUMENT CONTAINING A RELEASE OF ALL CLAIMS AGAINST NATIONAL GRID.  PLEASE REVIEW CAREFULLY BEFORE SIGNING.***

(Id. at p. 1.) (emphasis in original.)  Likewise, at the end of the Agreement, before the signature lines, it states in boldface type:

> ***EMPLOYEE REPRESENTS AND WARRANTS THAT HE HAS READ AND FULLY UNDERSTANDS THE TERMS OF THIS AGREEMENT, INCLUDING THE GENERAL RELEASE CONTAINED IN PARAGRAPH 4, AND THAT EMPLOYEE'S SIGNATURE ON THIS AGREEMENT AFFIRMS THAT HE HAS ENTERED INTO THIS AGREEMENT FREELY, KNOWINGLY AND VOLUNTARILY AND HAS NOT RELIED UPON ANY REPRESENTATIONS OR STATEMENTS BY THE COMPANY OR BY ANY OF THE RELEASED PARTIES, EXCEPT AS SET FORTH IN THIS AGREEMENT.***

(Id. at p. 4.) (emphasis in original.)

3

The Agreement also includes a notice to Plaintiff of his rights thereunder. (Id. at ¶ 9.) Specifically, Plaintiff was advised in writing to consult with an attorney as to the Agreement's general release of claims. (Id.)   He was advised that the Agreement contained a release of all claims. (Id.) He was given 21 days to consider the Agreement before signing it. (Id.) Plaintiff acknowledged that if he signed the Agreement before the expiration of the 21-day period, he did so "knowingly and voluntarily," and waived the right to consider the Agreement for the entire period. (Id.) Plaintiff also was given 7 days following his execution of the Agreement to revoke it. (Id.)

Plaintiff's Union was a party to the Agreement.  The first "Whereas" clause states that Plaintiff was suspended without pay with a recommendation for discharge "for engaging in certain misconduct." (Id. at p. 1.) The second "Whereas" clause states that both the Union and Plaintiff requested that National Grid not discharge Plaintiff and that Plaintiff be permitted to retire as a National Grid employee effective July 1, 2013. (Id.)  The Union also agreed to withdraw any and all grievances that it had filed on Plaintiff's behalf and not to submit any further grievances regarding Plaintiff. (Id. at ¶ 5.)

Plaintiff expressly acknowledged in the Agreement that he was "fully and fairly represented" by the Union, and he requested that the Union enter into the Agreement as he "desires to have the document's terms executed." (Id. at ¶ 12.)  Plaintiff, his Union representative and National Grid representatives executed the four-page Agreement on May 31, 2013, and Plaintiff's signature was witnessed by a notary public. (Id. at p. 4.)

C.    **Procedural History**

Following his resignation, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission and received a "Notice of Right to Sue" on or about March 28, 2014.  (Collins Aff., Ex. A, ¶ 3.)  On June 18, 2014, Plaintiff filed the Complaint, which alleges disability discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and the New York State Human Rights Law, N.Y. Exec. Law. § 296 ("NYSHRL").  (Id. ¶¶ 1, 19-25.)

## ARGUMENT

## POINT I

### THE COMPLAINT SHOULD BE DISMISSED DUE TO PLAINTIFF'S WAIVER OF HIS RIGHT TO SUE NATIONAL GRID.

A.    **Standard for Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint where the plaintiff has "fail[ed] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering a motion to dismiss the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Cerny v. Rayburn*, 972 F.Supp.2d 308, 311 (E.D.N.Y. 2013).  Nonetheless, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

ME1 18769527v.1

**B.**     **The Standard for Evaluating Employee Waivers**

Under federal law, an employee may waive the right to bring a discrimination claim if the waiver is made knowingly and voluntarily. *See Bormann v. AT&T Communications, Inc.*, 875 F.2d 399, 402 (2d Cir. 1989); *see also Laramee v. Jewish Guild for the Blind*, 72 F.Supp.2d 357, 360-61 (S.D.N.Y. 1999) (applying *Bormann* in connection with ADA claim). The Second Circuit utilizes a "totality of the circumstances" test to determine whether a waiver is voluntary. *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d Cir. 1998). Factors to be considered in making this determination include:

> (1) the plaintiff's education and business experience, (2) the amount of time that the plaintiff had possession of or access to the agreement before signing it, (3) the plaintiff's role in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, (6) whether the consideration given to the plaintiff in exchange for the waiver exceeds the employee benefits to which the plaintiff was already entitled by contract or law.

*Bormann*, 875 F.2d at 403 (citation omitted). These factors are not exhaustive, and the *Bormann* court highlighted two additional factors: whether the employer encouraged the employee to consult with an attorney, and whether the employee had a fair opportunity to do so. *Bormann*, 875 F.2d at 403.

A court does not need to find that each factor has been satisfied in order to find a waiver enforceable. *See Fletcher v. Palazzo*, 151 F. App'x 73, 75 (2d Cir. 2005) (citing *Bormann*, 875 F.2d at 403); *see also Rivera v. Sovereign Bank*, 976 F.Supp.2d 270, 280-81 (E.D.N.Y. 2013). "The absence of a single factor is not necessarily dispositive ... [and] not every factor must be in defendants' favor for the release to be found knowing and voluntary ...." *Figueroa v. MRM Worldwide*, 12 Civ. 4115, 2014 WL 902953, at *6 (S.D.N.Y. Mar. 7, 2014) (internal citations omitted).

ME1 18769527v.1

A court may determine on a motion to dismiss whether a release is knowing and voluntary in situations where, as here, the relevant information is apparent from the face of the Complaint and the Agreement. *See Kramer v. Vendome Grp. LLC*, 11 Civ. 5245, 2012 WL 4841310, at *2-7 (S.D.N.Y. Oct. 4, 2012) (granting motion to dismiss based upon plaintiff's knowing and voluntary release of claims); *see also Matusovsky v. Merrill Lynch*, 186 F.Supp.2d 397, 400-01 (S.D.N.Y. 2002) (same); *Laramee*, 72 F.Supp.2d at 360-61 (same).

**C.    The Totality of the Circumstances Shows that the Release was Voluntary.**

It is readily apparent under *Bormann's* totality of the circumstances test that Plaintiff knowingly and voluntarily waived his right to bring suit against National Grid.  First, the Agreement satisfies the test of clarity.  It is only four pages in length and is clearly captioned, "AN IMPORTANT LEGAL DOCUMENT CONTAINING A RELEASE OF ALL CLAIMS AGAINST NATIONAL GRID."  It states in plain English that Plaintiff is waiving his right to bring any claim against National Grid, including the specific ADA and NYSHRL discrimination claims at issue in this case.  The Agreement clearly and unambiguously lays out its terms and the respective obligations of National Grid, Plaintiff and the Union.  Because the Agreement and its release are "in plain English that would be clear to a layperson," this factor weighs strongly in favor of the release's validity. *Kramer v. Vendome Grp. LLC*, 2012 WL 4841310, at *4.

Three *Bormann* factors relate to the provision of legal advice and require the Court to consider whether Plaintiff was represented by an attorney, advised to consult with one, or had the opportunity to do so.  These factors also weigh heavily in favor of the release's validity.  The Agreement expressly advised Plaintiff to consult with an attorney, and he had time both before and after signing to consult with one if he so desired. (Collins Aff., Ex. B, ¶ 9.)  Provisions of a release that encourage the releasor to consult with an attorney weigh in favor of the release's

7

enforceability. *See Kramer*, 2012 WL 4841310, at *4; *see also Hsueh v. Bank of N.Y.,* No. 05 Civ. 5345, 2006 WL 2778858, at *5 (S.D.N.Y. Sept. 26, 2006).

Even if Plaintiff did not consult with an attorney, the clear involvement of his Union also militates in favor of validity. "[T]he general rule is that union representation satisfies the fifth Bormann factor." *Mandavia v. Columbia Univ.*, No. 12 Civ. 2188, 2013 WL 2391695, at *9 (S.D.N.Y. June 3, 2013) (citing *Khadaroo v. New York Presbyterian Hosp.*, No. 10 Civ. 1237, 2012 WL 893180, at *5 (S.D.N.Y. Mar. 15, 2012)). Here, Plaintiff's Union was involved in the negotiations for the Agreement, and his Union representative signed the Agreement. Indeed, Plaintiff acknowledged in the Agreement that his Union had fully and fairly represented him in this matter. (Collins Aff., Ex. B, ¶ 12.) Under similar circumstances, courts have found releases to be valid. *See In re OCA Interpreters Litig.*, 10 Civ. 7356, 2013 WL 3733382, at *10 (S.D.N.Y. July 16, 2013) *report and recommendation adopted,* 2013 WL 5312506 (S.D.N.Y. Sept. 10, 2013) (release valid where agreement stated that plaintiffs had consulted with their union, and the union president had signed the agreement); *see also Rozenfeld v. Dep't of Design & Const. of City of New York*, 875 F.Supp.2d 189, 200 (E.D.N.Y. 2012) (enforcing waiver of Title VII claim by plaintiff who did not consult with attorney, but "was represented by his union representative").

Plaintiff also had sufficient time to review the Agreement. Plaintiff had 21 days to consider the Agreement and seven additional days to revoke it after signing. (Collins Aff., Ex. B, ¶ 9.) Courts have found similar periods sufficient to satisfy the second *Bormann* factor. *See Rivera*, 976 F.Supp.2d at 283 (Plaintiff given 45 days to sign weighed in favor of release's validity, even though she signed it the next day); *see also Johnston v. Carnegie Corp. of N.Y.,*

No. 10 Civ. 1681, 2011 WL 1118662, at *3 (S.D.N.Y. Mar. 23, 2011) (21 days to consider an agreement supportive of release's validity).

The third *Bormann* factor also weighs in favor of a finding that the release was voluntary. Although Plaintiff's role in deciding the terms of the Agreement is not detailed in the Complaint, Plaintiff requested in the Agreement that the Union enter into it because he desired to have its terms executed. (Collins Aff., Ex. B, ¶ 12.) Furthermore, Plaintiff and his Union requested that National Grid not discharge Plaintiff, but instead permit him to retire. (Id. at p. 1.) Thus, Plaintiff and his Union had substantial input into the Agreement's final terms, which supports the release's validity. *See In re OCA Interpreters Litig.*, 2013 WL 3733382, at *10 (valid waiver where union obtained concessions on employees' behalf in exchange for release).

Plaintiff also had the knowledge and capacity to enter into the Agreement. Satisfying the first *Bormann* factor is not an onerous burden. An employee does not have to be a business executive to waive claims voluntarily. In fact, courts frequently have found a high school education sufficient. *See, e.g., Aylaian v. Town of Huntington*, 762 F.Supp.2d 537, 543 (E.D.N.Y. 2011) (plaintiff's high school education and employment demonstrated ability to understand terms of release); *see also Laramee*, 72 F.Supp.2d at 360; *Bachiller v. Turn On Prods., Inc.*, No. 00 Civ. 8701, 2003 WL 1878416, at *4 (S.D.N.Y. Apr. 14, 2003) (plaintiff with high school equivalency diploma knowingly and voluntarily released claims). While Plaintiff's level of schooling is not apparent from the Complaint, his work experience satisfies this factor. Plaintiff worked for National Grid and its predecessors for over 30 years, and received several promotions during that period. (Collins Aff., Ex. B at ¶¶ 7-10.) Plaintiff's final job title of Emergency Service Specialist and his crucial job duties of repairing and maintaining high voltage lines suggest, at a minimum, the cognitive ability to acquire specialized training and

knowledge and to follow instructions regarding matters of significant personal and public safety. (Id. at ¶ 10.)

Finally, as detailed and acknowledged in the release, Plaintiff received good and valuable consideration in exchange for his release of claims.  (Id. at ¶ 4.)  National Grid agreed to convert retroactively a disciplinary suspension without pay to a paid vacation of almost two full months. (Id. at ¶ 1.)  It further agreed not to discharge Plaintiff for engaging in certain misconduct and permitted him to retire as a National Grid employee, as sought by Plaintiff and his Union.  (Id.) An employer's agreement not to proceed with discipline against an employee is sufficient consideration to support a release under *Bormann.  See In re OCA Interpreters Litig.*, 2013 WL 3733382, at *12-13 (finding that employer gave plaintiffs something of value when it agreed to drop pending disciplinary charges even though under no obligation to do so); *Rozenfeld*, 875 F.Supp.2d at 200 (holding that defendants "gave adequate consideration under *Bormann* because they agreed not to hold the investigative interview or pursue any other disciplinary action against Plaintiff in exchange for him signing the Stipulation"); *Vargas v. Manhattan & Bronx Surface Transit Operating Auth.*, 08 Civ. 9254, 2010 WL 1783555, at *6 (S.D.N.Y. Apr. 30, 2010) (reduction in punishment of employee constituted sufficient consideration for release).

In sum, all of the *Bormann* factors weigh in favor of a finding that Plaintiff knowingly and voluntarily entered into a general release of claims that bars the instant lawsuit. Accordingly, under the totality of the circumstances Plaintiff waived his right to bring this action against National Grid.

ME1 18769527v.1

**D.**     **Plaintiff Has Waived All State Law Claims Against National Grid.**

Under New York law, a release of discrimination claims is a contract whose interpretation is governed by principles of contract law. *See Goode v. Drew Bldg. Supply, Inc.*, 266 A.D.2d 925, 925, 697 N.Y.S.2d 417, 418 (4th Dep't 1999) (dismissing discrimination claims brought under the NYSHRL due to existence of valid release).  Courts have recognized that the *Bormann* standard for determining the validity of a release of federal discrimination claims is more stringent than the analysis required under New York law. *See Rivera*, 976 F.Supp.2d at 285-86; *Laramee*, 72 F.Supp.2d at 359.  Accordingly, as Plaintiff has waived his right to proceed under federal law he has also waived his New York State law claim.

## CONCLUSION

For the foregoing reasons, National Grid respectfully requests that its motion be granted, that the Complaint be dismissed, that Plaintiff take nothing from National Grid, and that the Court grant such other and further relief as it deems just and proper.

Dated:  September 19, 2014
        New York, New York

                                         McCARTER & ENGLISH, LLP

                                         By: _____
                                         Patrick M. Collins
                                         M. Christopher Moon
                                         245 Park Avenue, 27th Floor
                                         New York, New York 10167
                                         T. (212) 609-6800

                                         Attorneys for Defendant

11